UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM RAGLAND, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> COMMISSIONER GARY M. LANIGAN, et al., : <br> : <br> Defendants. : <br> : | Civ. No. 14-0458 (RBK) (KMW) <br><br><br> **OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. On June 4, 2014, this Court screened the complaint pursuant 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and permitted the complaint to proceed in part. Presently pending before this Court is defendants' motion for summary judgment. For the following reasons, defendants' motion for summary judgment will be granted.

## II. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23

(1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson,* 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").

### III.    BACKGROUND

As this Court noted in its screening Opinion, this case relates to plaintiff's allegations that the defendants have violated his due process rights by improperly withdrawing funds from his prisoner inmate account in October, 2013. Most specifically, plaintiff complains about funds that were taken out of his prisoner account beyond the level permitted by the applicable statutes and regulations. According to plaintiff, defendants are not entitled to summary judgment because "New Jersey does not provide a post-deprivation hearing when state officials are authorized to take funds from plaintiff's prison account." (Dkt. No. 49 at p. 5)

A review of plaintiff's prisoner account from this period indicates the following relevant transactions that occurred:

1. October 15, 2013 – Deposit of $26.00 for prison work (Transaction 5)

2. October 15, 2013 – Deduction of $15.00 to comply with state requirement that permits deductions in excess of one-time monthly fee of $15.00 (Transaction 6)

3. October 15, 2013 – Return of $15.00 to account in determining payment obligations under the Prisoner Litigation Reform Act ("PLRA") (Transaction 7)

4. October 15, 2013 – Deduction of $5.20 for PLRA payment (Transaction 8)

5. October 15, 2013 – Deduction of $5.80 for state court imposed obligations under state law (Transaction 9)

6. October 21, 2013 – Deduction of $15.00 for purchase of phone card (Transaction 10)

7. October 22, 2013 – Deposit of $25.00 from visiting room receipt (Transaction 11)

8. October 22, 2013 – Deduction of $5.00 for PLRA payment (Transaction 12)

9. October 22, 2013 – Deduction of $2.50 for state court imposed obligations under state law (Transaction 13)

10. October 22, 2013 – Deduction of $1.00 to pay back a pharmacy loan (Transaction 14)

11. October 22, 2013 – Deduction of $11.00 to pay back a pharmacy loan (Transaction 15)

12. October 22, 2013 – Deduction of $1.90 for a legal copying loan (Transaction 16)

13. October 22, 2013 – Deduction of $3.60 for a legal copying loan (Transaction 17)

(*See* Dkt. No. 46-7 at p. 12)

## IV.   DISCUSSION

As previously discussed, this Court permitted plaintiff's due process claim to proceed past screening. It appears as if plaintiff is objecting not to the fact that PLRA and state court judgment obligations were deducted from his prisoner account, but that the prison deducted too much from his account for these payments. The defendants argue that summary judgment is

appropriate in this case as there is a post-deprivation remedy available to plaintiff with respect to the withdrawal of his funds from his prisoner account. Furthermore, the defendants assert that the Third Circuit has found no procedural due process violations for routine deductions from an inmate account provided there is a post-deprivation remedy available to the plaintiff.

"[A] prisoner has a protected property interest in the funds held in his inmate account." *Hale v. Beard*, 168 F. App'x 532, 534 (3d Cir. 2006) (citing *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421 (3d Cir. 2000)). In considering a due process claim, courts "look to the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation." *Tillman*, 221 F.3d at 421 (citations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands in order to minimiz[e] the risk of error." *Id.* (internal quotation marks and citations omitted). However, "[t]he amount of notice due depends on context.'" *Id.* (quoting *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997) (citing *Gilbert v. Homar*, 520 U.S. 924 (1997))). "[W]here the State must take quick action, or where it is impractical to provide meaningful predeprivation process, due process will be satisfied by a meaningful postdeprivation remedy." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 538, 539 (1981)).

Plaintiff argues that the defendants withdrew funds with respect to what he owes under the PLRA and state court ordered obligations statutes beyond what the relevant statutes permit. Plaintiff's prisoner inmate account indicates that he had the following obligations:

1. PLRA obligations (i.e. filing fees for federal civil cases)
2. State Court ordered restitution in the amount of $4,992.86
3. Safe Neighborhood Services Fund penalty in the amount of $75.00

4. New Jersey Victims of Crime Compensation Board penalty in the amount of $50.00

5. Law Enforcement Officers Training and Equipment Fund penalty in the amount of $30.00

(*See* Dkt. Nos. 46-6 at p.15 & 46-7 at p. 2) Plaintiff's state court judgment of conviction notes that all monies are to be collected pursuant to N.J. STAT. ANN. § 2C:46-4, which states in relevant part as follows, "when such fine, assessment or restitution is imposed in conjunction with a custodial sentence to a State correctional facility or in conjunction with a term of incarceration . . . such fine, assessment or restitution shall be collected by the Department of Corrections." With respect to authorizing deductions from plaintiff's pay, the relevant New Jersey statute states:

> From moneys paid to inmates of correctional institutions, the superintendent of the institution shall withdraw sufficient moneys, in an amount not to exceed one-third of the inmate's total income, as may be required to pay any assessment, restitution or fine ordered as part of any sentence, and is authorized to withdraw from the remainder of the inmate's total income an amount not to exceed one-third of the total income as may be required to pay costs and fees charged or owing, pursuant to section 2 of P.L.1995, c. 254 (C. 30:7E-2).

N.J. STAT. ANN. § 30:4-92. However, the New Jersey Administrative Code has a further restriction on the amount of monies that can be deducted from a prisoner's inmate account; indeed: "[o]nly nonindigent inmate funds in excess of the one time monthly amount of $15.00 can be deducted by the Business Manager in accordance with (d) above." N.J.A.C. § 10A:2-2.2(h). With respect to a plaintiff's payment obligations under the PLRA, it has the following relevant provisions:

> Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees

5

> required by law, an initial partial filing fee of 20 percent of the greater of--
> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1).

Defendants make the following arguments in asserting that plaintiff's due process rights were not violated:

> Regarding due process claims related to PLRA deductions, Ragland knew that DOC [Department of Corrections] was ordered to assess and deduct filing fees from his account because, as in this case, he filed the application to proceed in forma pauperis. As the plaintiff in this and other cases wherein he proceeded in forma pauperis, he must have received a copy of the court order that directed DOC to assess PLRA filing fees, the same as in this case. (See this court's order attached as Exhibit B). Therefore, he received adequate notice of the PLRA assessments and had the opportunity to be heard. By withdrawing fees as required by the PLRA statute to pay for Ragland's assessments, DOC was "simply complying with the law and court order directing the fee withdrawal." *See Dudley v. United States*, 61 Fed. Cl. 685, 688 (2004). Ragland could also use the Inmate Remedy System to grieve his PLRA deductions or file a claim under New Jersey Tort Claims Act. N.J.S.A. 59:1-1 *et seq.* Therefore, he received all the process due to him.
>
> Ragland's due process claims related to his State court-imposed deductions also lack merit. It is without question that he received notice and had the opportunity to be heard on obligations imposed upon him in State court. Ragland's court-ordered restitution, assessments, fees and penalties for SNSF, VCCO and LEOTF, are clearly documented on his judgment of conviction. (Exhibit C). Not only did Ragland receive a copy of his judgment of conviction, he was present at sentencing with his attorney when the court ordered the assessments. *Id.* If Ragland desired to challenge his court-imposed deductions, he could have use [sic] the Inmate Remedy System to grieve these deductions as well, or file a claim under the New Jersey Tort Claims Act. Therefore, he received due process for his State court-imposed deductions.

(Dkt. No. 46-1 at p. 22-23)

A. PLRA Deductions

Defendants are entitled to summary judgment on the issue of the deductions related to plaintiff's PLRA payments. Courts have rejected due process challenges to the PLRA before. Indeed, as one court has noted:

> Although courts have recognized a prisoner's interest in his funds, they have also recognized that inmates are not granted full control over their money while in prison, and debit procedures similar to those in question have been applied in the prisoner context. *See Mahers v. Halford,* 76 F.3d 951, 954 (8th Cir. 1996), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). Moreover, prisoners are not absolutely deprived of the use of their funds when those funds are applied toward the filing-fee requirements. The funds are being utilized for the prisoner's benefit just as a non-indigent's money is used by him to proceed in federal court. Furthermore, the Act charges a prisoner no more than anyone else who is adjudged able to pay-and under much more generous payment terms. Thus, the prisoner's private interests do not weigh in favor of requiring additional procedures.
>
> There is also little risk of an erroneous deprivation, and requiring additional procedures is not necessary. The prisoner is required to file an affidavit and a certified copy of his trust fund account statement. The court will order the fee assessment and the prison officials will forward the initial filing fee to the district court, when funds exist. After the initial filing fee is paid, the 20 percent payment provision becomes applicable. Such procedures are more generous than those accorded to the average litigant denied in forma pauperis status. Thus, the protections accorded prisoners are adequate.
>
> The government's interest in the fee system is that of reducing frivolous prisoner suits to relieve the strain that litigation is placing on federal courts and the prison system in general. This interest, combined with the satisfactory procedures provided and the weak private right in this case, compel the conclusion that the Act does not violate a prisoner's right to procedural due process.

*Hampton v. Hobbs*, 106 F.3d 1281, 1287-88 (6th Cir. 1997); *see also Murray v. Dosal*, 150 F.3d 814, 818-19 (8th Cir. 1998). Plaintiff does not contest that he received pre-deprivation notice of these deductions. Plaintiff attached to his complaint a copy of the Facility Rule handbook that

details that the PLRA payments will be deducted from his prisoner account. Furthermore, he does not argue that he did not have notice of the withdrawal of funds because he in fact received *in forma pauperis* status in another federal case that was the subject of this deduction. To the extent that plaintiff argues that too much money was taken out of his prisoner account for his PLRA payments, he has a post-deprivation remedy available to him. Indeed:

> An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer,* 468 U.S. 517, 530–36 (1984); *Parratt v. Taylor,* 451 U.S. 527, 543–44 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 328 (1986). In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan,* No. 12–1478, 2012 WL 4662487, at *4 (D.N.J. Oct. 2, 2012). To the extent that petitioner is arguing some type of due process claim that the amount taken out of his account for his PLRA payments was too much, New Jersey provides a post-deprivation remedy for unauthorized deprivation of property by public employees through the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1–1, *et seq.* Accordingly, defendants are entitled to summary judgment on plaintiff's claim that his due process rights were violated through the PLRA deductions to his prisoner inmate account.

B.  <u>State Court Ordered Obligations</u>

Plaintiff also argues that the amount taken out of his prisoner account for state court ordered obligations violated his due process rights. The United States Court of Appeals for the Third Circuit has stated that "federal due process requires inmates to be informed of the terms of DOC Policy and the amount of their total monetary liability to the [State]." *Montanez v. Sec'y*

8

*Pa. Dep't of Corr.*, 773 F.3d 472, 486 (3d Cir. 2014) (citation omitted). Indeed, in *Montanez*, the Third Circuit specifically distinguished a plaintiff's state court ordered obligations from room and board type assessments because each inmate has a unique judgment. *See id.* at 484. Furthermore, in *Montanez*, the Third Circuit stated that even when the matters involve "routine matters of accounting . . . inmates are entitled to some pre-deprivation notice of the prison's deduction policy." *Id.* Additionally, "the mere fact that an inmate's sentence includes a fine, coupled with a state statute compelling prison administrators to deduct funds from the inmate's prison account, does not satisfy the requirement of pre-deprivation due process." *Id.* at 485 (citation omitted).

In this case, defendants are entitled to summary judgment on the state court ordered obligation deductions as well. Plaintiff does not argue that he was not given any type of pre-deprivation notice to the deductions from his prisoner account for his state court ordered obligations. Indeed, as noted by defendants, the state court judgment against him specifically states the amount that he owes. Furthermore, as indicated above, plaintiff attached to his complaint a copy of the Department of Corrections Facility handbook that indicates the policy with respect to the taking of a prisoner funds for these state court ordered obligations. Plaintiff does not assert that he never received this pre-deprivation notice. Accordingly, plaintiff fails to show that that there is a material issue of fact outstanding with respect to his due process claim related to the state court ordered obligations. Furthermore, as with his PLRA payments, to the extent that plaintiff is asserting that the defendants have deducted too much from his account for these payments, a post-deprivation remedy is available for plaintiff.

Plaintiff also argues N.J. STAT. ANN. § 2C:43-3.1 is preempted by the PLRA. That state statutory section provides as follows:

a. (1) In addition to any disposition made pursuant to the provisions of N.J.S. 2C:43-2, any person convicted of a crime of violence, theft of an automobile pursuant to N.J.S. 2C:20-2, eluding a law enforcement officer pursuant to subsection b. of N.J.S. 2C:29-2 or unlawful taking of a motor vehicle pursuant to subsection b., c. or d. of N.J.S. 2C:20-10 shall be assessed at least $100.00, but not to exceed $10,000.00 for each such crime for which he was convicted which resulted in the injury or death of another person. In imposing this assessment, the court shall consider factors such as the severity of the crime, the defendant's criminal record, defendant's ability to pay and the economic impact of the assessment on the defendant's dependents.

(2)(a) In addition to any other disposition made pursuant to the provisions of N.J.S. 2C:43-2 or any other statute imposing sentences for crimes, any person convicted of any disorderly persons offense, any petty disorderly persons offense, or any crime not resulting in the injury or death of any other person shall be assessed $50.00 for each such offense or crime for which he was convicted.

(b) In addition to any other disposition made pursuant to the provisions of section 24 of P.L.1982, c. 77 (C. 2A:4A-43) or any other statute indicating the dispositions that can be ordered for adjudications of delinquency, any juvenile adjudicated delinquent, according to the definition of "delinquency" established in section 4 of P.L.1982, c. 77 (C. 2A:4A-23), shall be assessed at least $30.00 for each such adjudication, but not to exceed the amount which could be assessed pursuant to paragraph (1) or paragraph (2)(a) of subsection a. of this section if the offense was committed by an adult.

(c) In addition to any other assessment imposed pursuant to the provisions of R.S. 39:4-50, the provisions of section 12 of P.L.1990, c. 103 (C.39:3-10.20) relating to a violation of section 5 of P.L.1990, c. 103 (C.39:3-10.13), the provisions of section 19 of P.L.1954, c. 236 (C. 12:7-34.19) or the provisions of section 3 of P.L.1952, c. 157 (C.12:7-46), any person convicted of operating a motor vehicle, commercial motor vehicle or vessel while under the influence of liquor or drugs shall be assessed $50.00.

(d) In addition to any term or condition that may be included in an agreement for supervisory treatment pursuant to N.J.S. 2C:43-13 or imposed as a term or condition of conditional discharge pursuant to N.J.S. 2C:36A-1, a participant in either program shall be required to pay an assessment of $50.00.

(3) All assessments provided for in this section shall be collected as provided in section 3 of P.L.1979, c. 396 (C. 2C:46-4) and the court shall so order at the time of sentencing. When a defendant who is sentenced to incarceration in a State correctional facility has

not, at the time of sentencing, paid an assessment for the crime for which he is being sentenced or an assessment imposed for a previous crime, the court shall specifically order the Department of Corrections to collect the assessment during the period of incarceration and to deduct the assessment from any income the inmate receives as a result of labor performed at the institution or on any work release program or from any personal account established in the institution for the benefit of the inmate. All moneys collected, whether in part or in full payment of any assessment imposed pursuant to this section, shall be forwarded monthly by the parties responsible for collection, together with a monthly accounting on forms prescribed by the Victims of Crime Compensation Board pursuant to section 19 of P.L.1991, c. 329 (C. 52:4B-8.1), to the Victims of Crime Compensation Board.
(4) The Victims of Crime Compensation Board shall forward monthly all moneys received from assessments collected pursuant to this section to the State Treasury for deposit as follows:
(a) Of moneys collected on assessments imposed pursuant to paragraph a.(1):
(i) the first $72.00 collected for deposit in the Victims of Crime Compensation Board Account,
(ii) the next $3.00 collected for deposit in the Criminal Disposition and Revenue Collection Fund,
(iii) the next $25.00 collected for deposit in the Victim Witness Advocacy Fund, and
(iv) moneys collected in excess of $100.00 for deposit in the Victims of Crime Compensation Board Account;
(b) Of moneys collected on assessments imposed pursuant to paragraph a.(2)(a), (c) or (d):
(i) the first $39.00 collected for deposit in the Victims of Crime Compensation Board Account,
(ii) the next $3.00 collected for deposit in the Criminal Disposition and Revenue Collection Fund, and
(iii) the next $8.00 collected for deposit in the Victim and Witness Advocacy Fund;
(c) Of moneys collected on assessments imposed pursuant to paragraph a.(2)(b):
(i) the first $17.00 for deposit in the Victims of Crime Compensation Board Account, and
(ii) the next $3.00 collected for deposit in the Criminal Disposition and Revenue Collection Fund, and
(iii) the next $10.00 for deposit in the Victim and Witness Advocacy Fund, and
(iv) moneys collected in excess of $30.00 for deposit in the Victims of Crime Compensation Board Account.

> (5) The Victims of Crime Compensation Board shall provide the Attorney General with a monthly accounting of moneys received, deposited and identified as receivable, on forms prescribed pursuant to section 19 of P.L.1991, c. 329 (C. 52:4B-8.1).
> (6)(a) The Victims of Crime Compensation Board Account shall be a separate, nonlapsing, revolving account that shall be administered by the Victims of Crime Compensation Board. All moneys deposited in that Account shall be used in satisfying claims pursuant to the provisions of the "Criminal Injuries Compensation Act of 1971," P.L.1971, c. 317 (C. 52:4B-1 et seq.) and for related administrative costs.
> (b) The Criminal Disposition and Revenue Collection Fund shall be a separate, nonlapsing, revolving account that shall be administered by the Victims of Crime Compensation Board. All moneys deposited in that Fund shall be used as provided in section 19 of P.L.1991, c. 329 (C. 52:4B-8.1).
> (c) The Victim and Witness Advocacy Fund shall be a separate, nonlapsing, revolving fund and shall be administered by the Division of Criminal Justice, Department of Law and Public Safety and all moneys deposited in that Fund pursuant to this section shall be used for the benefit of victims and witnesses of crime as provided in section 20 of P.L.1991, c. 329 (C. 52:4B-43.1) and for related administrative costs.

N.J. STAT. ANN. § 2C:43-3.1.

The Supremacy Clause of the United States Constitution states as follows:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. "When a state law is attacked as violative of the Supremacy Clause, a federal court must determine whether the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 856 (3d Cir. 1975). The New Jersey statute cited above does not stand as an obstacle to the full execution of the PLRA. Indeed, the funds deducted from plaintiff's account were first

subject to PLRA deduction before any other deductions under state law. Thus, plaintiff's Supremacy Clause argument is without merit.

    C.  Other Deductions

It is not altogether clear whether plaintiff is also arguing that the other deductions in October, 2013, from his prisoner account (legal copying and pharmacy loans) violated his due process rights. While defendants argue that they are entitled to summary judgment on plaintiff's due process claims with respect to these deductions, plaintiff's response to the motion is entirely related to the PLRA and state court ordered obligation deductions, not these other deductions. Nevertheless, as previously indicated, plaintiff attached the facility handbook to his complaint and he does not state that he was not presented with this handbook prior to these deductions. This handbook includes a section that indicates that funds owed to the institution will be collected from inmate pay as well as visit receipts. (*See* Dkt. No. 1 at p. 34) Plaintiff does not argue that he was not provided with this pre-deprivation notice as found in the handbook that funds could be taken out of his account for amounts owed to the pharmacy and for legal copying services. Furthermore, as with plaintiff's other due process claims, he has a post-deprivation remedy available to him to grieve these deductions through the New Jersey Tort Claims Act. Accordingly, to the extent that he is also alleging a due process violation for these deductions, the defendants are entitled to summary judgment as well on this claim.

    D.  Request for Mandamus

Plaintiff has filed a request for mandamus seeking this Court to rule on defendants' motion for summary judgment. Petitioner's request will be denied as this Court has now ruled on defendants' motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted and plaintiff's request for mandamus relief will be denied. An appropriate order will be entered.


DATED:  June 27, 2016

                                                      s/Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge